PARIENTE, J.,
concurring.
In 2007, this Court unanimously denied Roger Lee Cherry relief on his claim of intellectual disability because Cherry had a full scale IQ score of 72. Cherry v. State, 959 So.2d 702 (Fla.2007). The Court was wrong, as we have now been told by the United States Supreme Court in Hall v. Florida, — U.S. -, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014), and the error is of such constitutional magnitude that the Eighth Amendment demands that the error be corrected. I was part of the Court in Cherry that made a legal error — one that could literally mean the difference between life and death.
Yet Justice Canady, in his dissent in this case, which he elaborates on in his dissent in Walls v. State, — So.3d -, 41 Fla. L. Weekly S466, 2016 WL 6137287 (Fla. Oct. 20, 2016), states that Cherry should not get the benefit of Hall — even though the United States Supreme Court specifically disapproved of the bright-line IQ cutoff set forth in the very case involving Roger Lee Cherry:
In summary, every state legislature to have considered the issue after Atkins— save Virginia’s — and whose law has been interpreted by its courts has taken a *703 position contrary to that of Florida. Indeed, the Florida Legislature, which passed the relevant legislation prior to Atkins, might well have believed that its law would not create a fixed cutoff at 70. The staff analysis accompanying the 2001 bill states that it “does not contain a set IQ level.... Two standard deviations from these tests is approximately a 70 IQ, although it can be extended up to 75.” Fla. Senate Staff Analysis and Economic Impact Statement, CS/SB 238, p. 11 (Feb. 14, 2001). But the Florida Supreme Court interpreted the law to require a bright-line cutoff at 70, see Cherry, 959 So.2d, at 712-713, and the Court is bound by that interpretation.
Hall, 134 S.Ct. at 1998 (emphasis supplied).
Justice Kennedy, writing for the majority in Hall, also explained the flaw in looking only at IQ as conclusive evidence of intellectual disability:
It is not sound to view a single factor as dispositive of a conjunctive and interrelated assessment. See DSM-5, at 37 (“[A] person with an IQ score above 70 may have such severe adaptive behavior problems ... that the person’s actual functioning is comparable to that of individuals with a lower IQ score”). The Florida statute, as interpreted by its courts, misuses IQ score on its own terms; and this, in turn, bars consideration of evidence that must be considered in determining whether a defendant in a capital case has intellectual disability. Florida’s rule is invalid under the Constitution’s Cruel and Unusual Punishments Clause.
Id. at 2001 (emphasis supplied).
And further directing that intellectual disability could not be determined by a number but by a consideration of all factors, including adaptive functioning, the Supreme Court warned:
Intellectual disability is a condition, not a number. See DSM-5, at 37. Courts must recognize, as does the medical community, that the IQ test is imprecise. This is not to say that an IQ test score is unhelpful. It is of considerable significance, as the medical community recognizes. But in using these scores to assess a defendant’s eligibility for the death penalty, a State must afford these test scores the same studied skepticism that those who design and use the tests do, and understand that an IQ test score represents a range rather than a fixed number. A State that ignores the inherent imprecision of these tests risks executing a person who suffers from intellectual disability. See APA Brief 17 (“Under the universally accepted clinical standards for diagnosing intellectual disability, the court’s determination that Mr. Hall is not intellectually disabled cannot be considered valid”).
Id. (emphasis supplied).
As this Court recognized in Oats v. State, Hall changed the manner in which courts must consider evidence of intellectual disability. We stated that: “courts must consider all three prongs in determining an intellectual disability, as opposed to relying on just one factor as dispositive ... [tjhese factors are interdependent, if one of the prongs is relatively less strong, a finding of intellectual disability may still be warranted based on the strength of other prongs.” Oats, 181 So.3d 457, 467-68 (Fla.2015).
Justice demands that Roger Lee Cherry have an opportunity to establish that he is intellectually disabled under the standards established by the United States Supreme Court under the Eighth Amendment, which prohibits the execution of those who *704 are, in fact, intellectually disabled. As we stated in Thompson v. State, 208 So.3d 49, 50, SC15-1752, 2016 WL 6649950, at *1 (Fla. Nov. 10, 2016), “to fail to give [the defendant] the benefit of Hall, which disapproved of Cherry, would result in a manifest injustice, which is an exception to the law of the case doctrine.” More than fundamental fairness, the risk of executing a person who is not constitutionally eligible for the death penalty surpasses any other considerations that this Court looks to in attempting to ensure the even-handed administration of the death penalty. This principle could not be better expressed than in the words of Justice Kennedy writing for the majority in Hall:
The death penalty is the gravest sentence our society may impose. Persons facing that most severe sanction must have a fair opportunity to show that the Constitution prohibits then- execution. Florida’s law contravenes our Nation’s commitment to dignity and its duty to teach human decency as the mark of a civilized world. The States are laboratories for experimentation, but those experiments may not deny the basic dignity the Constitution protects.
Hall, 134 S.Ct. at 2001. I concur with the majority that Cherry is entitled to a new evidentiary hearing pursuant to the United States Supreme Court’s decision in Hall and our decision in Oats.